GEORGE B. SLATER & another *vs.* DEXTER RAWSON.

Where.a deed of a lot, in an extensive tract of woodland, described it as " running south by T.'s farm, so far as to include 150 acres "; it was held that the jury were authorized to extend the line of the land conveyed beyond the southerly line of T.'s farm, where the other boundaries, which were established by satisfactory proof, and the whole description of the granted premises, clearly showed that the recital of T.'s farm, as the extent of the southern boundary, was a defective and imperfect description of that boundary.

If a grantor of land is not seized thereof when he makes his deed of conveyance, his convenant of warranty does not attach to the land and run with it ; and he, there-fore, is not liable to an action, by the assignee of his grantee, for breach of such covenant.

Where an assignee of a grantee, in an action of covenant against the grantor, avers and proves that the grantor had neither seizin nor title, at the time of his grant, the grantor is not estopped to rely on his want of seizin as a defence to the action on the covenant of warranty.

Where facts, stated in a report of the evidence at the trial of the cause, and conceded by both parties, show an objection to the plaintiff's recovery, which cannot be re-moved by further proof, the court will consider such objection open, though it was not raised at the trial.

THIS was an action of covenant broken to recover damages for breach of the covenants of right to sell, and of warranty, contained in a deed from the defendant, dated March 5th, 1821, conveying the premises hereinafter described to Samuel Slater and John Tyson, through whom, by several mesne conveyances, the plaintiffs made claim as assigns and subsequent purchasers.

The case was tried before *Dewey*, J. and the parties after-wards stated the following facts, in the form of a report of the evidence, &c. at the trial.

The defendant's said deed to said Slater and Tyson describ ed the granted premises as " a parcel of land bounded beginning at a heap of stones, it being the southeast corner of the King lot : thence north, 26 degrees 30 minutes east, by said King lot,

117 rods to a pitch pine tree with stones about it ; thence east,
3 degrees south, by the Thompson lot, 169 rods to a stake and
stones ; thence east, 15 degrees south, by land of said Rawson,
100 rods to a stake and stones ; thence west, 19 degrees south,
by the Seaver lot, 221 rods 9 links to a clump of black oak
trees; thence west 1½ degrees north, 108 rods 23 links, by land
of said Rawson, to the first mentioned bound ; containing 130
acres." Said Tyson afterwards conveyed his right and inter-
est in said land to said Slater, and the plaintiffs claim under said
Slater.

The alleged breaches of the covenants in the defendant's
said deed, as above mentioned, were, that Elisha Jacobs, on
the 9th of September, 1839, entered upon 22 acres, (part of
the premises above described,) bounded beginning at a stake
and stones mentioned in the defendant's deed as next after the
pitch pine tree therein mentioned, on the north side of said lot,
being the third bound therein mentioned ; thence east, 15 de-
grees south, 100 rods to a stake and stones ; thence west, 19
degrees south, by the Seaver lot, 118½ rods to a stake and
stones ; thence north, 5 degrees 37½ minutes east, 61 rods to a
stake and stones by said lot; thence east, 3 degrees south, 12½
rods to the bound first mentioned — and ousted the plaintiffs.

The plaintiffs, to sustain this action, introduced sundry deeds
to show that their ouster from said 22 acres was rightfully yield-
ed to by them ; viz. a registered deed, dated May 6th, 1782,
from John Rawson to William Sears, under whom said Ja-
cobs, by sundry mesne conveyances, claimed title. The de-
scription of the land, conveyed by this last mentioned deed, was
thus : " A certain tract of land, situate in said Gore of land,
joining partly on Oxford land, and partly on Douglas west line,
and is bounded, beginning at the southwest corner at a heap of
stones, being the southwest corner of a 200 acre lot of land
belonging to Edward Davis, Esq. in Douglas line, as sup-
posed ; then running northerly on Douglas line, by said Davis's
land, to Oxford line ; then running westerly until it comes to
Thompson's farm, so called, now in possession of Benjamin
Davis ; then running south, about five degrees west, by said

Thompson's farm, so far as to include 150 acres ; thence running east, by said John Rawson's land, to Douglas west line aforesaid ; then northerly, on said Douglas line, to the bound first mentioned." *

A witness was called by the plaintiffs to testify as to a recent survey made by him of the Thompson farm, and of the adjacent land. He produced a plan made by him, and also a copy of a plan and survey of the same farm, made by William Chandler, in 1727, and transferred to the plan made by the witness. He fixed the southwest corner of the Davis lot, referred to in

**W.**          Thompson farm.                                    **E.**

Land conveyed to Sears by J. Rawson

Douglas west line.

Land in question.

**S.**

*s.* Starting point in D. Rawson's deed to Slater and **Tyson.**
*b.* Pitch pine tree,
*c. d.* Heaps of stones, } mentioned in said deed.
*e.* Black oak trees,

the deed from John Rawson to Sears, and designated it on his said plan.

The defendant contended that the Thompson lot was embraced within the broken lines on the plan, and that the complement of 150 acres could be had under the deed last mentioned, without running further south than the land in controversy. The plaintiffs contended that the Thompson lot was what is designated on the plan as the unbroken line ; and that, in order to obtain the 150 acres, it was necessary to extend as far south as the south line of the parcel in controversy.

Evidence was introduced, as to the existing ancient monuments, tending to show that the Thompson lot, in 1782, included the area between the broken and unbroken lines.   It appeared that the premises were a part of a large tract of woodland, several miles in extent, no part of which was divided by fences ; and there was no evidence of any actual occupation, by any of the claimants, of the contested premises, until recently ; and that when John Rawson conveyed to Sears, he owned lands extending further south than the parcel in controversy, and including it.

The defendant contended, 1st. That the Thompson lot, having been referred to, both in his deed to Slater and Tyson, and in John Rawson's deed to Sears, was to be regarded as a monument by which the rights of the parties were to be governed, instead of lengths of line or points of compass ; and that the claimants under the deed to Sears had no right to extend the limits of their grant further south than the southern line of the Thompson farm ; and consequently, that said deed did not embrace the land in dispute.   He further contended, 2d.   That if the deed to Sears embraced the land in dispute, he (the defendant,) was never seized of the same, and therefore nothing passed by his deed, and that the measure of damages must be the money paid, and interest.

The judge reserved these questions, and permitted the plaintiff to give evidence tending to show that the Thompson farm was the area bounded by the unbroken line, and that, in order to include 150 acres between the Thompson lot and the line of Douglas, and extending southerly from Oxford line, it would

embrace the land in dispute, and extend further south than the
southerly line thereof : And the jury were instructed, that if the
Thompson farm was bounded by the unbroken line on the plan,
the plaintiffs were entitled to recover, and, if entitled to recov-
er, that the measure of damages would be the value of the 22
acres at the time of the ouster, and interest. The jury found
for the plaintiffs and assessed the damages at $500.

Judgment to be rendered on the verdict, or a new trial to be
ordered, as the court may direct.

*Washburn*, for the defendant.

*C. Allen*, for the plaintiffs.

DEWEY, J. This is an action to recover damages for the
breach of certain covenants in a conveyance of land made by
the defendant to Samuel Slater and John Tyson, through whom,
by sundry conveyances, the plaintiffs derive their title as as-
signees and subsequent purchasers. The covenants in the deed
of the defendant are in the usual form, embracing the covenants
of seizin and right to convey, a covenant against incumbrances,
and also a covenant of warranty. The breach alleged in the
declaration is, that one Elisha Jacobs, having an elder and bet
ter title than that of the defendant, entered upon the land, claim-
ing title thereto, and that the plaintiffs, admitting his superior title,
voluntarily surrendered the possession to him. To establish the
title of Jacobs, the plaintiffs offered in evidence a deed from
one John Rawson to William Sears, dated May 6th, 1782, and
sundry other deeds conveying this title, as derived from Sears,
and vesting it in Jacobs. The defendant admitted that the deed
from John Rawson was prior in time, to that under which he
claimed to have acquired title ; but he contended that the deed
of Rawson to Sears did not include the land which the plaintiffs
had thus voluntarily surrendered to Jacobs. This presented a
question of boundary, and much evidence thereon was submitted
to the jury. In the course of the inquiry as to the boundaries
of the land conveyed by Rawson to Sears, a question arose as
to the construction to be given to that part of the description of
the land in this deed, which is contained in the following words :
" Thence running south, about five degrees west, by said Thomp-

son's farm, so far as to include 150 acres ;" it being contended
by the defendant, that the grantee could not, under that descrip-
tion of the land, extend his line beyond the southerly line of the
Thompson farm, but must be limited by that as a monument.
But it was ruled, that it was competent for the jury, in fixing
the location and boundaries of the Sears lot, to extend the line
of the same beyond the southerly line of the Thompson farm,
if taking the other boundaries, which were established by satis-
factory proof, and the whole description of the land conveyed,
they clearly show that the recital of the Thompson farm, as the
extent of the boundary, was a defective and imperfect descrip-
tion, as to this part of the land conveyed.   To this ruling, as it
seems to the court, there can be no valid objection.   The re-
cent case of *Clark* v. *Munyan*, 22 Pick. 410, fully sustains it,
and the same principle has been frequently adopted.

The only other question, upon which any opinion in matter
of law was given at the trial before the jury, was upon the sub-
ject of damages.   The jury were directed, if they should find
for the plaintiffs, to assess the damages at the value of the land
at the time of the voluntary surrender of it by the plaintiffs upon
the entry by Jacobs, with interest from that time ; and this, as
we understand, is not denied by the defendant's counsel to be the
correct rule for assessing the damages, if the plaintiffs can main-
tain their action.   But upon the argument before us, upon the
case as stated by the parties, the defendant insists, that as he
was not seized of the land, which is now the subject of contro-
versy, at the time he executed the deed to Slater and Tyson,
and so nothing passed by his deed to his immediate grantees,
and they therefore could pass no estate, nor any covenants, to an
assignee, which would authorize an action in his own name, he
is not liable to the plaintiffs, to any extent, on his covenants.

The distinction as to the legal effect of the different cove-
nants usually introduced into our conveyances, however little it
may have been understood or regarded prior to the cases of
*Marston* v. *Hobbs*, 2 Mass. 433, and *Bickford* v. *Page*, 2
Mass. 455, is now very well settled.   The covenants of seizin
and right to convey are to all practical purposes synonymous

covenants ; the same fact, viz. the seizin in fact of the grantor, claiming the right to the premises, will authorize both covenants, and the want of it is a breach of both. But upon these covenants no action can be maintained in the name of an assignee or subsequent purchaser ; for if broken at all, they are necessarily broken at the moment of the execution of the deed ; and not running with the land, they do not pass by a subsequent conveyance of the land. The covenant of warranty, on the other hand, is a covenant running with the land, and may be made available to a subsequent purchaser, however remote, if the conveyances are taken with proper words to pass the covenant. But to support an action by an assignee, on the covenant of warranty, it is necessary that the warrantor should have been seized of the land ; for, by a conveyance without such seizin, the grantee acquires no estate, and has no power to transfer to a subsequent purchaser the covenants in his deed ; because, as no estate passes, there is no land to which the covenants can attach. If therefore the defendant, at the time of the making of his deed to Slater and Tyson, was not seized, then the covenant of warranty did not pass to the plaintiffs as assignees, and the only liability of the defendant is upon his covenant of seizin, which covenant, for the reasons already stated, is wholly unavailable to the plaintiffs.

It is to be taken as established by the finding of the jury, and is also in accordance with the pleadings on the part of the plaintiff, that the defendant, at the time of making his conveyance, had no legal title to the twenty-two acres of land, which the plaintiff has yielded up to the claim of Jacobs ; but that the title to the same was then, and had been for a long period previously, in William Sears and those claiming under him. The further iquiry then is, whether the defendant was seized in fact of these premises, claiming right thereto, at the time of executing his deed to Slater and Tyson.

The case, as stated by the parties, in the report, finds that the premises, which are the subject of this controversy, were a part of a large tract of woodland unenclosed by fences, and of which there had been no actual occupation by any of the parties. Taking these facts to be correctly stated, there was

Slater & another *v*. Rawson.

clearly no seizin in fact, in the defendant, acquired by an entry and adverse possession.   The rule, as to lands that are vacant and unoccupied, that the legal seizin follows the title, seems to be applicable here ; and having ascertained in whom is the legal title, that also determines in whom the seizin is.   But the plaintiffs have alleged in their declaration, and established by their evidence, the fact that the legal title to the land surrendered was not in the defendant at the time of the execution of the deed by him, but was in those who claim under William Sears.   It being thus shown that there was no seizin in fact, nor any legal title to the premises, in the defendant, it necessarily follows that the covenants of seizin and right to convey were broken, and that nothing passed to Slater and Tyson, which they could transfer to the plaintiffs as the foundation of an action in their own name.   The covenant of seizin was broken at the moment of the execution of the deed, and became a mere chose in action not transferrable ; and the covenant of warranty is wholly ineffectual, as no land passed to which it could be annexed ; and the result, therefore, from this view of the case, is that the plaintiff cannot maintain his action.

It was said in the argument, that the defendant should be estopped to deny his seizin, and thus avoid the covenant of warranty, because by his own deed he has affirmed it, and that should be conclusive against him.   Without deciding whether such estoppel might or might not, under any circumstances, be interposed where there are various covenants in a deed, and the party be thus subjected, at the election of the covenantee, to damages different from those which the law has prescribed for the covenant which is actually broken ; or, in the case of an assignee, to allow him to recover for the breach of a covenant which is shown in fact never to have passed to him ; it seems to us clear, that in the present case no such objection can avail, as the plaintiff, in his declaration, and by his own showing, has established the fact that the defendant had neither the seizin nor the legal title to the land conveyed.

It was further suggested, upon the argument, that the ground of defence now principally relied on, that the covenant of war-

ranty did not pass to the plaintiffs, in consequence of the want of seizin in the defendant, is not open to the party ; not having been presented in this form at the trial before the jury. As a general rule, questions must be raised at the trial, or they will not be open here ; and for the very obvious reason, that the opposite party may have the proper opportunity to supply any defects in his proof upon the points excepted to. But as, in the present case, the facts, as stated in the report, and as they appear to be conceded by both parties, show the objection, now urged and relied upon in defence, to be one that could not be obviated by any further proof on the part of the plaintiff, the court have felt themselves authorized to consider that point as open, and have disposed of it in the manner already stated. The result is, therefore, that upon the case as now stated, the plaintiff cannot maintain his action.

*New trial ordered*